## Yoshida et al. v. Gelbert Improvement Company et al.

*William Taylor, Jr.*, for plaintiffs.

MacDade, P. J., November 4, 1946.—On October 25, 1946, these plaintiffs, because defendants failed to answer complainant's bill in equity when so legally

required, entered a decree pro confesso because defendants failed to enter an appearance within 15 days of service sec. reg. et sec. leg.

We have now reached the point that a final decree is requested; hence to reach that result we have made certain findings of fact and conclusions of law based upon the pleadings and filed the same.

Before signing the final decree we desire to pose the following

## Questions of law

1. Does a court of equity have jurisdiction to remove clouds on title?

2. Is a condition against occupancy of land by persons not of the white race void as being against public policy?

3. Are such conditions assignable?

## Discussion

1. Notwithstanding the limitations upon the jurisdiction of courts of equity resulting from the enactment of sundry statutes providing legal remedies for quieting title, in the present situation the court of equity has jurisdiction to declare the purported condition to be void, and to quiet the title. See Adams v. Rosenfeld, 30 Del. Co. 396.

2. The validity of restraints upon alienation to and occupancy of land by persons of designated races is a subject of sharp controversy throughout the Nation, and an interesting collection and discussion of the cases will be found in 114 A. L. R. 1227 and 66 A. L. R. 531.

Roughly, the cases appear to fall into two groups: Those involving restraints upon alienation and those restricting occupancy. As a rule the southern courts uphold both types of restrictions, while the western courts hold restraints upon alienation to be void, but tend to look with more favor upon restrictions of occupancy. The distinction between restrictions on aliena-

tion and restrictions on occupancy certainly appear to be highly artificial and illogical for, as a practical matter, if a man not of the white race may not occupy land, obviously he cannot for economic reasons buy the same.

In Pennsylvania there appears to be one case touching the subject. In Ellsworth et al. v. Stewart et al., 9 Erie 305, it holds the right of alienation to be an inherent and inseparable quality of an estate in fee simple, and that a condition in a deed forbidding the sale of land to "any person of Polish . . . Slavish or Negro descent" is an unreasonable restraint of alienation, and against public policy, and void.

Attention is drawn to the fact that the purported restriction here is perpetual, and the court is not required to pass upon the validity of restrictions which are limited in time.

3. Although lacking an express reservation of the right of reëntry for condition broken, this attempt to restrict is stated as a condition and not as a covenant. Therefore, as between the Gelbert Improvement Company, original grantor, and complainants, remote grantees, the deed and purported covenant or condition must be construed in favor of remote grantees and against grantor.

Should the restriction not be held against public policy, the question arises as to whether anyone is now in a position to insist upon its enforcement.

Inasmuch as corporate defendant, original grantor, has conveyed away all of its land in Upper Providence Township, and now has no interest there to protect, such a covenant, if it were held to be a covenant, cannot be enforced by it. The courts have so often held that a person out of title has no standing to enforce restrictions that this proposition seems axiomatic. The Gelbert Improvement Company would scarcely be in a position to urge that the restriction should be construed in its favor, and the right to reënter should be supplied

since to do so would be to ask that the deed be construed in favor of grantor and against grantee.

Can the restriction be enforced by neighboring property owners?

Since the neighbors are remote grantees of the Gelbert Improvement Company, which for this case must be regarded as a grantor, their rights can rise no higher than its, and they are bound to have the deed construed against them. To construe the deed against them would be to construe the restriction as a condition, and the question arises as to whether or not a condition can be assigned.

26 C. J. S. 482, §148—"Persons Entitled to Benefit of Condition or Breach: Generally only the grantor or his heirs can take advantage of a breach of condition . . ."

The common-law rule was that the right of re-entry for condition broken was not assignable, hence such right could be exercised only by the grantor who created the condition, or by privies in blood. And, in accordance therewith, it appears to be a prevailing rule that grantor's right, either before or after condition broken, will not pass to his transferee or assignee.

The owners of adjacent property obviously could claim a right to enforce the condition only as assignees.

### Conclusions of law

A. The restriction is void, as against public policy;

B. It cannot be enforced by the Gelbert Improvement Company since that corporation now owns no land in the vicinity;

C. The owners of adjacent land cannot enforce the condition since their rights to enforcement would be derived through an assignment, and assignment of conditions is prohibited by the common law;

D. As shown by their failure to enter an appearance, the parties who might have insisted upon enforcement obviously are indifferent as to the outcome of this case.